Next matter, Tice v. Bristol Myers. Mr. Hart? Yes, Your Honor, may it please the Court, my name is Douglas Hart. I represent Carol Herman Tice in the appeal of September 13, 2007 order in the Western District which granted her employer, Bristol Myers Squibb, summary judgment. If the Court would like a brief presentation of the facts and procedural background, I can certainly give that to you. If not, I could delve right into my argument. Why don't you do that? Sure. Your Honor, the three major reasons why we're here is first, our allegation or our assertion is that the District Court erred in applying the doctrine of collateral estoppel with regard to an administrative law judge decision that was made for a Sarbanes-Oxley whistleblower claim to her subsequent claims of age and sex discrimination that were raised under Title VII and the Age Discrimination Employment Act. Our second kind of corresponding issue is even if the doctrine of collateral estoppel was applicable in this instance, we believe that the legal analysis that was applied by the District Court was incorrect and inaccurate. And then thirdly, Your Honor, based upon the fact that this case never proceeded through discovery at all, the summary judgment motion was presented at the same time or contemporaneously with the answer that was filed. There wasn't any discovery conducted in this matter at all. Was there a motion made at that point to delay the summary judgment motion while discovery ensued? No, there was not, Your Honor. In fact, we filed a reply brief, obviously. We filed a reply brief to the summary judgment motion that was filed. So you didn't make a motion to ask for discovery? No, that is correct. We actually just opposed the summary judgment motion that was filed. You opposed the summary judgment, but if you wanted discovery, you should have made a motion. Okay. Okay. Okay. Where do you go from there? Well, where do we go from there, Your Honor? The second point, you said. That's actually the third point. I believe going back. Did I miss one? I'm sorry. That's okay. And I apologize for this. This is why I did want to reserve three minutes for rebuttal time if it's okay. At this point in the stage, in the game, we feel as though the underlying matter, the Sorbonne-Zoxley matter, where Ms. Tice, the appellant, filed a whistleblower claim based upon the fact that she believed that her, the adverse employment action, her termination may have been the result of her engagement in a protected activity. Isn't this pretty much a classic case of relitigating the same issues in the district court that were litigated in the administrative proceeding? Aren't the contentions the same that were presented under the Sox Act as are presented now in the complaint in the district court? Actually, Your Honor, the factual environments are very similar. However, where the difference comes in is that, first and foremost, as far as the collateral estoppel doctrine even being language within the Sorbonne-Zoxley Act that specifically states that no rights or remedies, that nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee made under federal or state law or under any collective bargaining agreement. Going back to your point, Your Honor, if it's thought that this would be a collateral attack on the decision made with the whistleblower claim, actually that's inaccurate. The Sorbonne-Zoxley claim is the crux of that matter is what the protected activity is if she actually engaged in protected activity and then if the adverse employment action was taken as a result of that protected activity. We understand that the legitimate proffered reason could be the same in both cases. However, The decision was that she was terminated because of making fraudulent statements basically involving her doctor calls. That's actually correct, Your Honor. And Ms. Theis, the appellate in this matter, has admitted that. She admitted that she made fraudulent statements and the company's position was anybody that makes fraudulent statements with respect to calls on the physicians is to be automatically terminated whether or not there had been a prior hearing or not. So why was the district court wrong in holding against your client? Well, the reason why the district court was wrong, Your Honor, is because the district court did not provide us the opportunity to actually prove that that proffered reason was pretextual for discriminatory eminence. I think what happened to the Sorbonne-Zoxley I don't understand that. The district court had before the material that she had falsified. You didn't ask for any discovery to show any pretextual or any other matter. The district court had a motion for summary judgment and the district court not having contravailing circumstances or any contradictory affidavits or contradictory testimony granted the summary judgment. What did the district court do wrong? Well, I think back to my initial point, I think what the district court did incorrectly was it applied the doctrine of collateral estoppel at all. Yes, but you said even if the district court hadn't done that, the district court was wrong. I thought that's what you said. And that is correct. If you said that, then tell me why the district court was wrong. Forget about, just for a moment, forget about the fact that there was a three-day trial before the administrative law judge. What did the district court do that was wrong in light of the testimony that it had, the sworn testimony that it had before it? Well, Your Honor, actually, and back to my initial point, the elements for an age discrimination and a sexual discrimination claim are incorrect. They are different than what the elements are to establish a whistleblower claim under the Sarbanes-Ostley Act. So I believe that the issues were not the same between the SOPS claim. Maybe the issues were slightly different, but the fact, you have to live with the fact, right? Correct. You have to live with the fact, and how could the district court err in finding that that fact was a legitimate, non-discriminatory reason under Fuentes v. Persky? And I actually agree. To the extent that we should have filed a motion to conduct discovery, I will concede on that point, and that should have been done. However, our contention at that point was the summary judgment should not have been, for the other reasons that we have, the summary judgment should not have been rendered anyways. So instead, it was a statistical decision to file a reply to the summary judgment, believing that it would be dismissed. At that course in time, I still believe that the strongest argument is that there is, it appears to be that the legislator could not have intended for the issue of, the doctrine of issue preclusion to basically take out the remedies or rights of any unsuccessful litigant of a whistleblower. Well, the idea is to prevent inconsistent findings, which you may very well end up with here. Isn't that the thrust of the legislation, to prevent inconsistent findings? The ALJ made a specific finding. Didn't the ALJ make a specific pretext finding? Actually, Your Honor, the ALJ made a determination that Ms. Tice, the appellant, was fired for falsifying her sales call records. I think that the ALJ, and if you look through the memorandum of opinion of the lower court, of the district court, they go through the seven issues that were actually identified. Why isn't that binding in the district court matter? Well, that could be. And the argument here is not that they did not present a legitimate and proper reason. We certainly understand that there is a proper reason, and we understand what it is. What our argument is that we have not had the opportunity where we believe that we should, either in the lower court or before the district court, to identify that that proper reason could have been pretextual. But the finding by the ALJ was that it was the reason for the termination. If it's the reason for the termination, ipso facto, it's not pretextual. The whole point of pretext is that the employer proffers a legitimate nondiscriminatory reason, and the fact finder ascertains that that's not the real reason. But did the ALJ here not make a finding that this was the real reason she was terminated? Your Honor, and to that extent, yes, that is correct. The ALJ did make a finding that this was the proper reason, was the actual reason as to why Ms. Tice was terminated. All right. And under Sox, your relief is to take an appeal from the ALJ to this court, I guess, or to some court of appeals. It would be to this court. And you didn't do that. Instead, you shifted gears. I'm not saying, you know, necessarily I'm not criticizing the strategic decision, but don't you have to live with that fact finding? Well, Your Honor, that kind of brings up a whole other point that I'd like to raise. First, this wasn't an instance where there was a claim filed under the Sarbanes-Oxley Act and there was no discrimination filed after. This was certainly not an instance where a sore loser files another lawsuit. That's not what happened here. There were parallel claims. There was a claim pending with the Equal Employment Opportunity Commission at the time that the administrative law judge had this hearing. So it was not as though there was one and then the other. These claims were parallel claims. And based upon the fact that before the Secretary of Labor, pursuant to the statute, you have to file Sarbanes-Oxley whistleblower claim within 90 days of the date of termination. You're basically saying that the finding of the ALJ did not cover other claims that you were asserting, namely age and gender discrimination. Is that your argument? That is exactly my argument, Your Honor. Your Honor, what my argument is, and I can pretty much summarize it, is the administrative law judge Now you're suggesting that the decision to fire should have been, I guess, I shouldn't say separated, but it only confined itself to the fraudulent claims that she made, not that she could have been fired also because she was, because of her age and because of her sex. That is correct. And I think if you look through the opinion that was actually rendered by the administrative law judge Isn't that a choice that she made? I mean, certainly she could have gone to the district court in the first place. And she could have. And she could have, Your Honor. However, she would have chosen that path and not filed the Sarbanes-Oxley claim. I look at this as being an analogous to alternative pleading. If she did not file the claim under the Sarbanes-Oxley Act within the 90 days, she would have lost that claim as well. So the only remedy that you're seeking is you want to go back and get discovery to show that she was actually terminated, not just because of the fraudulent reports she filed, but because of her age and sex. That is exactly it. Would you tell me just what would your discovery yield that's going to help you support those claims? Well, I think, and as we've alleged within our complaint, that Ms. Tice was under, has alleged that she has been under, that the pressure came from management to falsify those sales call records. And that there was other members within her, other sales representatives. That was all before the ALJ. That's true, Your Honor. But before the ALJ, the difference was that the issue, the potential issue of whether or not there was a discriminatory animus that was contextual in nature that had to do with her termination was not germane to the issues before the court. So in our argument now is that we did not try to allege that. Our focus at the administrative law judge level was whether or not her protected activity was associated with her termination. And there wasn't any. It's actually not germane if the surveys also whistleblower claim action. Did you file an affidavit to that effect with those facts? No, we did not. We did not. What did you file because the district court could not have granted summary judgment without having matters of evidence before it? Am I right? Actually, the summary judgment was granted immediately after the pleadings closed. We filed our complaint that had the allegations within our complaint. And then the answer, and then the Verified complaint? Actually, I do. At this time, I do not know. I don't believe so in the Western District. If it wasn't the verified complaint, then it doesn't rise to the dignity of it. Okay, I understand. Mr. Hart, thank you very much. Time's up. We'll get you back on rebuttal. Ms. Harris? May it please the Court. My name is Judith Harris. I represent Bristol-Myers Squibb in this matter. I'm prepared to answer questions if you'd like. We'll go back to the brief and the arguments that we've made. I think Your Honor's questions have touched on the crux of the issue here. Ms. Tice did have two avenues to seek relief, and she chose them both. And what happened was in the ALJ proceeding, in the Sarbanes-Oxley proceeding, where the claim was whether or not she engaged in protected activity covered by Sarbanes-Oxley and whether Bristol-Myers Squibb took its action for a legitimate, non-retaliatory reason was at issue. And additionally at issue was whether or not Bristol-Myers Squibb's action in terminating her was an action it would have taken absent her so-called protected activity. Now the ALJ just held that she did engage in protected activity. But it went on. And he went on to decide that we had a legitimate reason for terminating her. And the legitimate reason was unrefuted. The testimony is clear. Mr. Hart is presenting basically a mixed motive case. I was fired not because of the fraudulent reports, where I was fired for that reason, but I was also fired because of my sex and because of my age. That goes to the issue, I believe, Judge Pointing, of pretext. And the issue of pretext came up in the Sarbanes-Oxley. Not on the same basis. Not on the basis. But his argument is he didn't get a chance to flesh that out in the administrative proceeding. Well, we would say, and we argued below, and Judge Conte agreed with us on this, that everybody, the undisputed evidence was anybody who falsified sales call reports was terminated. That was never refuted. And curiously, Ms. Tice took the stand in rebuttal in the ALJ proceeding after that testimony was proffered, and she never refuted it. She couldn't refute it. She admitted that she knew the policy. There was a code of conduct. She signed off on it, and she did it. She admitted to the investigator internally, and she admitted on the stand before the ALJ. I falsified the sales call reports. Bristol Myers put a witness on who conducted the internal investigation who said, everybody who did that was fired. There could be no pretext, either in the Sarbanes-Oxley proceeding, because they treated everybody, regardless of whether they filed a Sarbanes-Oxley claim, the same way if you falsified calls. Similarly, in the Title VII and the ADEA claim, the issue of pretext would surface if once Bristol Myers Squibb offered his legitimate nondiscriminatory reason, we terminated her because she falsified, it was admitted, and Judge Conte had that record, had portions of that transcript in front of her. Bristol Myers made that argument below. And then you go on to touch on the issue of pretext. And the only way that Ms. Tice could possibly show pretext would be to show that males were kept, males who did what she did were kept, and younger people who did what she did were kept. And because everybody went out the door, she had no ability to show that pretext. That was her argument. And that's where she is. She made the choice. She proceeded down both roads. And, in fact, curiously, she proceeded all the way through the Sarbanes-Oxley and never appealed. She could have appealed. And the additional bar that she has here is that the statute covering SOX provides that the final order of the And the statute expressly states that. Isn't there some sense, though, that Tice had to navigate Scilla and Charybdis here? I mean, SOX provides her a remedy. Title VII provides her a remedy. Why does she have to pick one and run the risk of being excluded from the other? She didn't pick one. She picked both. Yeah, but your argument is that she has to live with the first one she picked, and she's out of court on the second one because of what happened in the first. She does in this particular case, Judge Hardiman, she could have brought the SOX case to the federal court and had the Title VII case, the ADEA case, and the SOX case tried together. She could have done that. She just didn't time it right. But she had that ability because under SOX, if you don't proceed promptly enough through the ALJ proceeding, and she could have sought to have that held in advance. She could have come to the district court and brought all those claims together. She should have gone first. If she had gone first in the district court, she could have availed herself of both remedies. Yeah, she could have perhaps even sought to stay in the district court pending. But then wouldn't you be arguing that the findings of the district court on the Title VII case would have collateral stop effect in front of the SOX case that has been stayed? No, because I think given the passage of time, she could have litigated the merits of the SOX case at the same time she was litigating the Title VII and ADEA claim. At the exact same time, she has to avoid the preclusive effect of collateral estoppel by making sure she gets a trial. She has concurrent trials running in two different fora at the same time. No, she would have one trial in the district court. And the district court judge would have tried the Title VII case the ADEA case and the SOX case. Oh, the district court could have heard the SOX case. That's correct. You can't under SOX. She could have picked. She has concurrent jurisdiction over the SOX case. Well, after the passage of a certain amount of time in the SOX proceeding, yes, she could have. But there's a benefit to going to the SOX proceeding first, isn't there? I can't think of any. I can't either. I was hoping you would know that. No, I can't. These are strategic decisions that were made. We need help from time to time. Well, I can't think of any because the emerging jurisprudence on the SOX proceeding is that the remedies are far more limited under SOX than they are under Title VII and the ADEA. So the only benefit to go to the ALGA is perhaps a quicker forum in front of someone with expertise in the subject matter? I suppose I would – someone else would have to make that argument. There is a clear, it seems to me, a tension between proceeding administratively and the rights that Congress affords persons who are affected by discrimination under Title VII. Well, I think Judge Poynter, she had the option of appealing the ALJ's finding and filing in federal court and pending the appeal of the ALJ's finding, there would not have been a final order. It was only because she didn't appeal and the time for appeal expired that she found herself with a final order of the Department of Labor, which was a final order not subject to collateral attack, and she finds herself in this estoppel situation. Had she appealed the ALJ's decision and gone to federal court and brought her Title VII case, she would have been in a very different position. I still believe, factually, she would have had the problem because the record of the ALJ's hearing is undisputed. We would have offered it in the federal court. Indeed, we did argue as an alternative below that even if you didn't buy the collateral estoppel argument, you looked at the record, here's the undisputed evidence. And in fact, there is no dispute about the testimony. This record is one where the parties have, in both sets of briefs, conceded the very critical facts of the case. And curiously, in the Sarbanes-Oxley case, our legitimate nondiscriminatory reason had to satisfy a higher standard than it did in the Title VII and ADEA case. So that finding is a real bar, I think, to her claim in the Title VII. There's a state court claim that's filed in this case also? No, there isn't, Your Honor. I thought there was a Pennsylvania Human Relations claim. You may be thinking of another case. I do that quite a bit. But I see Mr. Hart is nodding yes, so I think he may. I don't believe there was a Pennsylvania Human Relations Act. I have no further. Thank you, Your Honor. Mr. Harris, thank you very much. Mr. Hart? Yeah, Your Honor, in rebuttal, I'd like to just touch upon a few points. Over and over again, we understand that it's being thrown back because she never appealed this Sox claim. Maybe just at the end of the Sox claim, she determined at that point in time that her claim wasn't because of the protected activity, but it had more to do with the sexual and age discrimination than why she was terminated. I don't think that she could be held accountable now for not raising further litigation when she believed that that litigation proved to her that her true claims were under discrimination models. Maybe you can answer that question. Why go through the administrative proceeding when you could have brought the whole ball of wax into federal court? Well, the Sox claim had to be raised within 90 days to the Secretary of Labor. That's due to the rules and procedures of the Sarbanes-Oxley Act, or at least the interpretation of the Act that we had three years ago whenever we filed these claims. But I still think, back to the bottom line, is that Ms. Tice's contention was that if she did not raise that Sox claim, she would have lost it. She had 90 days to do that. The EEOC provides you with 300 days in the common law. But Ms. Harris says you could have brought that same claim in federal court. After you raised the claim, within 90 days to the Secretary of Labor. But she had to initiate that action with a complaint to the Secretary of Labor within 90 days. And the next item that we have is that the statute that the defendants, or the appellees, are relying upon is the statute regarding the rules and procedures of how the Sarbanes-Oxley claim should have went, and that there should be precluded from a collateral attack coming back to the administrative law judge's decision. Again, we do not believe that it was a collateral attack because the issues were different. The administrative law judge concluded that Ms. Tice did not engage in a protected activity. And first and foremost, that is why her claim was pushed out or dismissed from the Sarbanes-Oxley whistleblower claim. From that point on, the further decisions that, you know, even if she had engaged in a protected activity, it still wouldn't have warranted her termination. Even if she had proven that it was a protected activity that had something to do with her adverse action, she still would have been fired as a result of falsifying sales call records. That's merely dicta. At that point in time, when they come off, and the bottom line of the administrative law judge was, what he interpreted this to be is she did not engage in any protected activity. That is a completely different issue that we're trying to make in the protection stage as to whether or not she was sexually discriminated against and discriminated against because of her age. And you are correct, Your Honor, there is a discrimination claim under the Pennsylvania Human Relations Act as well. I do want to understand something. I'm sorry. Sure. If she were 60 years old or 70 years old or as old as I am, there's nobody here that's older, and she admitted that she had falsified the calls, and they had a rule, a rigid rule that said you falsify calls, you get fired. Period. What difference would it make how old she was or what other reasons she had? Well, Your Honor, I know that I'm out of time, but I do want to answer the question. As Ms. Harris raised, the protection issue would be if there were males who also broke the rules, and if there were people under the age of 40 who also broke the rules, and that this rule was selectively enforced towards the individuals because they were over 40 years of age or because they were female. There's no evidence of that in the record. There is no evidence of that in the record, Your Honor, because at the lower. . . There is evidence of the fact that this is a rule that is automatically applied, as I understand it. Well, I believe that the evidence that Ms. Harris is pointing to is the investigator who actually got up on the scene and said that, yes, I recommend that we fire everybody who I investigate as breaking the rule. That leaves open to several other fluctuations that would be obtained in discovery such. . . Anyone else who had falsified the rules was not fired? We don't know that. Okay. Thank you. Thank you, Your Honor. Mr. Hart, thank you very much. Thank you. Counsel, for your arguments, we'll take the case under advisement. Thank you. Thank you. Let's take a very short break, about five minutes, and we'll be right back. Please rise.